FILED

2010 JUL 30 AM 11:32

STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ARG CORPORATION, NORBERT R. ) <br> TOUBES, *as a distributee of ARG* ) <br> *Corporation's assets*, ) <br> ) <br> Defendants. ) | Civil Action No. <br> Judge <br> <br> 3:10CV311 |

# COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General of the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and by and through its undersigned attorneys, alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607. The United States seeks recovery of its unreimbursed costs that have been or will be incurred by the United States in response to the release and/or threatened release of hazardous substances at and from the South Bend Lathe Superfund Site, located at 400 W. Sample Street, South Bend, Indiana ("Site" or "SBL Site").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action and each Defendant pursuant to 28 U.S.C. §§ 1331 and 1345 because this is a civil action commenced by the United States that

arises under the laws of the United States. This Court has exclusive original jurisdiction over this action pursuant to Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b), because it concerns controversies arising under CERCLA.

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the releases of hazardous substances from the Site occurred in this district and because the events or omissions giving rise to the claims herein occurred in this district.

### DEFENDANTS

4. Defendant ARG Corporation ("ARG") is incorporated under the laws of the State of Indiana. On March 28, 2008, the State of Indiana administratively dissolved ARG Corporation.

5. ARG owned the South Bend Lathe property, located at 400 W. Sample Street, South Bend, Indiana from May 30, 2000 to October 2, 2006.

6. Upon information and belief, ARG has limited or no assets.

7. Defendant Norbert R. Toubes ("Toubes") is an individual and a resident of the State of Florida. Toubes is a former resident of the State of Indiana. Between May 30, 2000 and October 2, 2006, Toubes was a resident of the State of Indiana.

8. Toubes owns seventy percent of ARG. Upon information and belief, ARG has distributed most or all of its assets to Toubes and the other partial owner.

9. Each Defendant is a "person" within the meaning of CERCLA Sections 101(21) and 107, 42 U.S.C. §§ 9601(21) and 9607.

## GENERAL ALLEGATIONS

10. The South Bend Lathe Site is located at 400 W. Sample Street in South Bend, Indiana. The Site was comprised of a 440,000 square-foot industrial building, containing various drums, containers, and pails, located on fifteen acres. Four underground storage tanks ("USTs") were present at the property at all relevant times prior to July 12, 2007. Three of the USTs were 20,000 gallon USTs. The fourth UST was a 5,000 gallon UST.

11. The Site is a "facility" within the meaning of CERCLA sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

12. Turnmaster Corporation ("Turnmaster") owned the Site from on or about January 8, 1993 to on or about May 30, 2000. Toubes was partial owner and President of Turnmaster.

13. In July 1992, Turnmaster conducted an Environmental Investigation at the Site. Turnmaster's investigation identified petroleum contaminated soil near the 5,000 gallon UST, including the presence of 1,2,4-Trimethlybenzene, 1,3,5-Trimethlybenzene, naphthalene, and xlyenes. Turnmaster did not test for PCBs during its investigation. Further, the investigation revealed asbestos containing materials, some of which was friable, inside the building on the SBL property.

14. On or about May 30, 2000, Turnmaster sold the South Bend Lathe property to ARG Corporation.

15. During ARG's ownership of the Site, hazardous substances were disposed of, within the meaning of Section 101(29) of CERCLA, 42 U.S.C. § 9601(29), at the Site.

16. On or about October 2, 2006, the South Bend Redevelopment Commission purchased the property from ARG for the amount of $663,071.84 and assumed the $336,928.16 that ARG owed in overdue property taxes.

17. On December 21, 2006, the City of South Bend, Indiana sent a notice to EPA requesting assistance of EPA's Emergency Response Section for help in determining whether an imminent threat to public health and welfare existed at the SBL Site.

18. On January 18, 2007, EPA and its Superfund Technical Assessment and Remediation Team ("START") contractor, Roy Weston, Inc., conducted a Site Assessment ("SA") at the Site.

19. The investigation identified 150 to 200 small containers and pails as well as twenty 55-gallon drums located in the South Bend Lathe building. Sampling results from the contents of the containers and drums revealed the presence of lead, barium, zinc, naphthalene, 2-methylnaphthaene, 2-Butanone, Tetrachloroethylene ("PERC"), acetone, ethylbenzene, toluene, and xylenes. The materials had flash points as low as 72.2°F.

20. The investigation further identified that the USTs contained gasoline-range organics, diesel-range organics, Polychlorinated Biphenyls ("PCBs"), 1,1,2,2-tetrachloroethane, 4-methyl-2-pentanone, acetone, benzene, ethylbenzene, methylene chloride, toluene, trans-1,2-dichloroethylene, naphthalene, 2-methylnapthalene, and bis(2-ethylhexyl)phthalate.

21. The investigation further identified asbestos containing material throughout the building, transformers containing PCBs, and mercury switches containing elemental mercury.

22. EPA and START contractors observed the dilapidated condition of the building, including broken windows, a leaking roof, and friable asbestos-containing debris. EPA and START contractors identified evidence of vandalism. EPA and START contractors observed staining on the floor near some of the containers and containers in poor or compromised conditions. EPA and START contractors also observed that some of the drums were deteriorated, overturned, and/or had staining on the floor near them.

23. Based on the SA, EPA concluded that the Site presented an imminent and substantial endangerment to the public health, welfare, and the environment.

24. On February 9, 2007, EPA sent a General Notice Letter to ARG, notifying it of its potential liability for the costs incurred or to be incurred at the Site.

25. On April 12, 2007, the EPA Superfund Division Director for EPA Region 5 signed an action memorandum for a non-time-critical removal action, determining that the actual release or threatened release of hazardous substances at the SBL Site posed an imminent and substantial endangerment to public health, welfare, and the environment.

26. Between June 27, 2007 and August 1, 2007, EPA conducted a removal action at the SBL Site. Removal activities included excavation of the four USTs, excavation of contaminated soil near the 5,000 gallon UST, removal of the PCB-containing transformers, asbestos removal, and removal of the drums, pails, and containers.

27. On July 5, 2007, EPA issued a Unilateral Administrative Order ("UAO"), pursuant to CERCLA § 106, 42 U.S.C. § 9606, ordering ARG to conduct the removal activities at the Site. On July 23, 2007, ARG notified EPA that it would not comply with the UAO.

28. During the removal action, EPA removed 44,518 kilograms of PCBs oil from five transformers, 41,453 kilograms of PCBs contaminated oil from the four USTs, 750 tons of contaminated soil near the 5,000 gallon UST, and 1,300 gallons of flammable liquid from various drums and containers that were found in the building.

29. As of June 30, 2010, EPA has expended at least $841,310.96 in costs for its response activities related to the SBL Site. EPA has continued and will continue to incur response costs, including administrative and enforcement costs, as a result of the continued release and/or threatened release of hazardous substances at the Site.

## FIRST CLAIM FOR RELIEF
### (Recovery of Response Costs)

30. The allegations appearing in Paragraphs 1 through 29 above are realleged and incorporated herein by reference.

31. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part: "(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for -- (A) all costs of removal or remedial action incurred by the United States Government ... not inconsistent with the national contingency plan ..."

32. Section 113(g)(2), 42 U.S.C. § 9613(g)(2), provides, in pertinent part: "In any such action [for recovery of costs] ... , the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

33. Section 101(29), 42 U.S.C. § 9601(29) defines "disposal" to mean the "discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."

34. Defendant ARG was the owner of the SBL Site at the time of the disposal of hazardous substances within the meaning of Section 101(20) of CERCLA, 42 U.S.C. § 9601(20), and Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

35. The SBL Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), because it is a building, site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.

36.     There have been "releases," or the substantial threat of releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of hazardous substances at or from the SBL Site, including releases or threatened releases of mercury, asbestos, PCBs, naphthalene, 2-methylnaphthaene, 2-Butanone, Tetrachloroethylene ("PERC"), acetone, ethylbenzene, toluene, xylenes, 1,2,4-Trimethlybenzene, 1,3,5-Trimethlybenzene, 1,1,2,2-tetrachloroethane, 4-methyl-2-pentanone, benzene, methylene chloride, toluene, trans-1,2-dichloroethylene, bis(2-ethylhexyl)phthalate and hazardous wastes.

37.     In response to the release or substantial threat of release of hazardous substances at the SBL Site, the United States has taken response actions at the SBL Site within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), and has incurred response costs as set forth in Paragraph 29 in connection with taking those response actions. Additional response costs have been and continue to be incurred, including enforcement costs.

38.     The response action taken, and the response costs incurred, by the United States at and in connection with the SBL Site are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

39.     Defendant ARG is jointly and severally liable to the United States pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all un-reimbursed response costs incurred, and to be incurred, by the United States in connection with the SBL Site facility, including enforcement costs and prejudgment interest on such costs.

40.     In pertinent part, Indiana law provides that a claim against a dissolved corporation may be enforced:

> (1) against the dissolved corporation, to the extent of its undistributed assets; or
> (2) if the assets have been distributed in liquidation, against a shareholder of the dissolved corporation to the extent of the shareholder's pro rata share of the claim or the corporate assets distributed to the shareholder in liquidation, whichever is less, but a

shareholder's total liability for all claims under this section may not exceed the total amount of assets distributed to the shareholder.

Indiana Code § 23-1-45-7(d).

41. To the extent ARG's assets are insufficient to satisfy its liability under paragraph 39, Defendant Toubes is liable, pursuant to Indiana Code § 23-1-45-7(d), as a shareholder of ARG to the extent of Toubes' pro rata share (i.e. seventy percent) of all un-reimbursed response costs incurred, and to be incurred, by the United States in connection with the SBL Site facility, including enforcement costs and prejudgment interest on such costs, or to the extent of ARG's assets distributed to him, whichever is less.

42. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that Defendant ARG is jointly and severally liable for future response costs that the United States may incur in connection with the SBL Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

1. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), enter judgment against ARG, jointly and severally, in favor of the United States for all response costs incurred by the United States for response activities relating to the Site, including prejudgment interest;

2. Pursuant to Indiana Code § 23-1-45-7(d), enter judgment against Toubes, in favor of the United States for all un-reimbursed response costs incurred, and to be incurred, by the United States in connection with the SBL Site facility, including enforcement costs and prejudgment interest on such costs, to the extent of Toubes' pro rata share of the unreimbursed response costs or the amount of ARG's assets distributed to him, whichever is less.

3. Enter a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that ARG is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for future response costs incurred at the SBL Site.

4. Award the United States the costs of this action; and

5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

KRISTIN M. FURRIE
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 616-6515
FAX: (202) 616-6584
kristin.furrie@usdoj.gov


DAVID CAPP
United States Attorney
Northern District of Indiana

WAYNE T. AULT
Assistant U.S. Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500
wayne.ault@usdoj.gov

OF COUNSEL:

MARK KOLLER
Associate Regional Counsel
U.S. Environmental Protection Agency - Region 5
77 W. Jackson Blvd. (C-14J)
Chicago, Illinois  60604