**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ARG CORPORATION and NORBERT R. )<br>TOUBES, )<br>)<br>Defendants. )<br>_____ )<br>)<br>ARG CORPORATION, )<br>)<br>Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF SOUTH BEND, acting through the )<br>SOUTH BEND REDEVELOPMENT )<br>COMMISSION, )<br>)<br>Third-Party Defendant. )<br>) | CAUSE NO. 3:10-CV-311 |

## OPINION AND ORDER

The United States brought this suit against ARG and Norbert Toubes seeking to recover costs the Environmental Protection Agency incurred cleaning up a property formerly owned by ARG. In turn, ARG has sought to shift liability onto the property's current owner, the City of South Bend. This is ARG's second attempt to do so. ARG's first third-party complaint against South Bend was dismissed for failing to state a claim.

Before the Court now is its amended third-party complaint, which South Bend has moved to dismiss (DE 72). For the following reasons, South Bend's motion is **DENIED**.

## BACKGROUND

I'll start with the facts as alleged in the Government's amended complaint and ARG's amended third-party complaint, which at this point I must accept as true. From 2000 to 2006, ARG owned the South Bend Lathe site, a 440,000 square-foot industrial site in South Bend, Indiana (DE 99 ¶¶ 19, 23-25). On December 15, 2006, ARG sold the property to the City of South Bend. *Id.* at ¶ 25. Days after the sale, South Bend notified the Environmental Protection Agency that hazardous substances on the property could pose a danger to the public's health. *Id.* at ¶ 26. The EPA investigated the property on January 18, 2007 and determined that the site did indeed present an imminent danger to the public. *Id.* at ¶¶ 27-32. The EPA ordered ARG to address the hazardous conditions, but ARG refused. *Id.* at ¶¶ 34-36. As a result, the EPA conducted the removal action itself, expending over $841,310.46 in the process. *Id.* at ¶¶ 34-38.

The Government then brought this case in December 2011 alleging ARG was liable for the response costs under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") (DE 1). It also included a claim against Toubes as a distributee of ARG's assets. *Id.* In response, ARG filed a third-party complaint against South Bend alleging that the contract between ARG and South Bend allocated responsibility for any clean-up costs to South Bend (DE 12).

South Bend moved to dismiss ARG's third-party complaint for failure to state a

-2-

claim, and, in August 2011, I found in favor of South Bend, dismissing the complaint (DE 30). I held that the contract of sale between ARG and South Bend unambiguously provided that ARG was solely responsible for remediating hazardous substances on the property arising from its ownership, use or operation. *Id.* at 6-8.

In June 2013, the Government sought leave to amend its complaint to add a piercing the corporate veil claim against Norbert Toubes (DE 51). I ended up allowing the amendment, which had the effect of dramatically increasing Toubes's potential liability (DE 61). In light of this change, I thought it was only fair to grant ARG leave to file an amended third-party complaint against South Bend. ARG filed the amended complaint in September 2013 (DE 64). This time, ARG is asserting a claim against South Bend under 42 U.S.C. 9613(f), which provides that a party that is potentially liable under section 9607(a) of CERCLA can seek contribution from any other potentially liable party. South Bend moved to dismiss the complaint. In the alternative, South Bend seeks reconsideration of my decision to allow ARG leave to amend (DE 72).

**ANALYSIS**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Determining whether a complaint states a plausible claim for relief requires me to draw on my judicial experience and common sense. *Id*. at 1950. And although at this stage I

must accept all allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by mere conclusory statements. *Id*. at 1949-50.

In addition, to recover against a third-party defendant, the third-party plaintiff must meet the demands of Federal Rule of Civil Procedure 14. This rule states that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). This means that "the third-party defendant [must] be potentially liable for the original plaintiff's claim." *West Bend Mut. Ins. Co. v. Willmez Plumbing, Inc.*, 2011 WL 1706833, at *2 (S.D. Ind. May 5, 2011) (citing *U.S. Gen., Inc. v. City of Joliet*, 598 F.2d 1050, 1053 (7th Cir. 1979) (holding that secondary liability "is a plain condition on the face of Rule 14").

ARG has stated a plausible contribution claim. Section 113(f) of CERCLA provides:

> "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title . . ."

42 U.S.C. § 9613(f). Here, the United States has instigated a civil action against ARG under section 9607(a) (DE 64 ¶ 1). ARG, in turn, alleges that the City of South Bend is potentially liable for the Government's claim under section 9607(a)(1), which provides that "the owner or operator of a vessel or facility" is liable for "all costs of removal or

remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(1)-(4)(a). South Bend owned the South Bend Lathe site when the Government conducted the removal (DE 64 at ¶¶ 11-12). Therefore, under the Section 113(f) of CERCLA, ARG is entitled to seek contribution from the City of South Bend. *Bernstein v. Bankert*, 733 F.3d 190, 202 (7th Cir. 2013), *cert denied*, 134 S. Ct. 1024 (2014) ("Where a person has been subjected to a civil action under 42 U.S.C. §§ 9606 or 9607(a), he may attempt to recover his expenditures through a contribution suit . . .").

The contribution claim against South Bend is, of course, collateral to the Government's claim against ARG. In other words, if the Government fails to obtain a judgment against ARG, ARG's contribution claim against South Bend becomes moot. Section 113(f) authorizes a party to seek contribution "during or following" a suit under § 9607, so ARG can bring the claim now, even though there isn't anything to contribute to yet. 42 U.S.C. § 9613(f); *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007); *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1044 (E.D. Wis. 2008) ("Plaintiffs were first sued by the EPA in August 2001, so they have been free to assert [their § 113(f) contribution claim] since at least that time.").

South Bend's initial argument for dismissal was that the sales contract between South Bend and ARG barred ARG's contribution claim. It has since backed off from this position. South Bend's argument was based on the assumption that the Government sought recovery from ARG only for costs that were attributable to ARG's

ownership of the site. Since the sales contract already allocated responsibility for those costs to ARG, South Bend reasoned that ARG couldn't state a plausible claim to relief. The Government has since made it clear that it is seeking to recover *all* of its response costs, regardless of whether the costs are tied to ARG's activities or not (DE 90 at 24 n.12). And South Bend has acknowledged this clarification (DE 84). This means that it is plausible that ARG will have to reimburse the Government for costs that have not been allocated by the sales contract. So South Bend's argument that the contract bars the contribution claim fails.

But while the contract does not totally bar ARG's claim, it does limit it. I held that the sales contract between ARG and South Bend unambiguously allocates responsibility for environmental remediation arising from ARG's ownership to ARG and remediation arising from South Bend's ownership to South Bend (DE 30 at 5). As South Bend has pointed out, contracts allocating environmental liability are enforceable under CERCLA. *Harley-Davidson v. Minstar, Inc.*, 41 F.3d 341, 344 (7th Cir. 1994). So if the government prevails against ARG, ARG will be held responsible for the environmental harm that it caused, South Bend will responsible for the harm that occurred while it owned the property (if any), and harm caused by prior owners of the property will be allocated between ARG and South Bend using "such equitable factors as the court determines are appropriate." 42 U.S.C. 9613(f).

South Bend also argues that it qualifies as a "bona fide prospective purchaser" of the South Bend Lathe site, and is thus shielded from liability by Section 107(r)(1) of

CERCLA. This may well be so, but in order to show that it qualifies as a "bona fide prospective purchaser," South Bend will have to prove, by a preponderance of evidence, that it meets the statutory requirements set out at 42 U.S.C. § 9601(40). Under that provision, various factors go into deciding whether someone is a bonafide purchaser under CERCLA. *Id.* Plainly, questions of fact abound, and deciding this is therefore is not proper on a motion to dismiss.

Finally, South Bend has moved for reconsideration of the decision to grant ARG leave to amend on the grounds that ARG's delay in bringing the claim has unduly prejudiced South Bend. I sympathize with South Bend's position, but the delay in this case will not cause South Bend undue prejudice as the statute of limitations on ARG's contribution claim has not yet begun to run. Section 9613(g)(3) authorizes a three-year statute of limitations for contribution claims that begins to run from the date of judgment of the 9607(a) claim. *Rumpke of Indiana, Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1241 (7th Cir. 1997). The Government has not yet obtained judgment on its 9607(a) claim against ARG, so even if I had denied ARG leave to amend its complaint, it could have waited until a judgment was entered against it and then brought the same claim, years later, in a separate proceeding. Accordingly, South Bend has not suffered any prejudice due to the delay, and it's motion for reconsideration is **DENIED**.

\* \* \*

I fully recognize that this order puts South Bend behind the eight-ball on a case that they have been out of for two years. Obviously, South Bend has to be allowed to

take discovery to defend against the third party claim that it is now subjected to. As I see it, there are a couple of options to consider: First, the trial presently set to begin on August 4, 2014, could be delayed so that the entirety of the case can be tried in one proceeding. Alternatively, the third-party complaint against South Bend could be bifurcated and stayed, the principal case against ARG and Toubes tried, and, if the government prevails the stay would be lifted and South Bend would be permitted to take discovery at that point. The former option has the virtue of avoiding two trials with what could be duplicate evidence. On the other hand, option two relieves South Bend of having to take discovery, and if the government doesn't prevail in the principal case, discovery would be unnecessary and those costs would be saved. These issues will be explored in a telephonic conference to be held on June 6, 2014.

## CONCLUSION

South Bend's Motion to Dismiss ARG's Complaint and for Reconsideration of Decision Allowing ARG to File an Amended Complaint (DE 72) is **DENIED**.

The Court hereby sets a telephonic conference for **June 6, 2014** at **10:00 a.m., Hammond/Central Time** to discuss the status of the case.

**SO ORDERED**.

ENTERED: May 30, 2014.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT